**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 14 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RONNIE LEE GIBSON,

        Petitioner - Appellant,

    v.

KEN KLINGER,

        Respondent - Appellee.

No. 99-5071

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 98-CV-370-K)**

Steven Michael Presson (Robert Wade Jackson, with him on the brief), Jackson &
Presson, P.C., Norman, Oklahoma, for Petitioner-Appellant.

James F. Kelly, Assistant Attorney General (W.A. Drew Edmondson, Attorney General,
with him on the brief), Office of the Attorney General of Oklahoma, Oklahoma City,
Oklahoma, for Respondent-Appellee.

Before **TACHA**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

**TACHA**, Circuit Judge.

Defendant Ronnie Lee Gibson appeals the district court's dismissal of his petition

for a writ of habeas corpus as untimely under the one-year limitations period provided by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1). In an order dated May 25, 2000, we issued a certificate of appealability on the issue of the timeliness of Mr. Gibson's federal habeas petition. We therefore exercise jurisdiction pursuant to 28 U.S.C. § 2253(a) and affirm.

## I. Background

The relevant procedural facts are as follows. On December 16, 1975, following the entry of a guilty plea, an Oklahoma district court sentenced Mr. Gibson to life imprisonment for first-degree manslaughter. On December 7, 1995, Mr. Gibson filed a petition for state post-conviction relief, which the Oklahoma court denied on April 25, 1996. Because he did not appeal the judgment within the thirty-day time period required under Oklahoma law, his time to appeal the district court's denial expired on May 25, 1996. Okla. Stat. tit. 22, § 18 app. rule 5.2(C)(2). On June 13, 1996, he filed a motion for leave to appeal out of time, which the state district court granted that same day. Mr. Gibson did not, however, continue to pursue his appeal out of time, choosing to wait until November 12, 1996, when he again filed a motion for leave to appeal out of time with the state district court. The district court entered an order granting his motion for leave to appeal out of time on February 20, 1997. Mr. Gibson then filed a motion for leave to appeal out of time with the Oklahoma Court of Criminal Appeals pursuant to Okla. Stat. tit. 22, § 18 app. rule 2.1(E)(1). On April 22, 1997, the appellate court granted the

request, and he filed an application for an appeal out of time on May 15, 1997. The Oklahoma Court of Criminal Appeals affirmed the district court's denial of state post-conviction relief on June 25, 1997.

Mr. Gibson did not file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the federal district court until May 20, 1998. The court dismissed his petition as untimely under the one-year statute of limitations for federal habeas petitions, 28 U.S.C. § 2244(d)(1), and denied his request for a certificate of appealability. Mr. Gibson then appealed the district court's denial of his petition and certificate of appealability, arguing the statute of limitations should be tolled from April 25, 1996, when the state district court denied his application for post-conviction relief until June 25, 1997, when the state appellate court affirmed the district court's denial. In an order issued May 5, 2000, we granted a certificate of appealability to address the issue of whether and to what extent the one-year limitations period should be tolled under 28 U.S.C. § 2244 (d)(2) in light of the state appellate court's grant of an appeal out of time.

## II. Jurisdiction and Standard of Review

We must first address whether we have properly acquired jurisdiction of this appeal. In the order dated May, 25, 2000, we granted a certificate of appealability (COA) on the procedural tolling question and did not address Mr. Gibson's substantive, constitutional claims. Around the time that we issued the order, the Supreme Court decided Slack v. McDaniel, 529 U.S. 473, 120 S. Ct. 1595 (2000), providing further

guidance on when a certificate of appealability should issue if a district court dismisses a habeas petition for procedural reasons: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. at 1604. In creating this two-step inquiry, the Supreme Court also noted that each step is "part of a threshold inquiry," which must be satisfied before the court of appeals hears the appeal. Id.

We granted a COA to address the timeliness of Mr. Gibson's petition under AEDPA and did not determine whether the petition debatably presents a "valid claim of the denial of a constitutional right." Before proceeding to the limitations issue, we must therefore review the constitutional claims. Because the district court did not address these claims and the parties have not briefed them on appeal, our review is limited. We will only take a "quick" look at the federal habeas petition to determine whether Mr. Gibson has "'facially allege[d] the denial of a constitutional right.'" Jefferson v. Welborn, 222 F.3d 286, 289 (7th Cir. 2000). After reviewing the habeas petition, we conclude that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack, 120 S. Ct. at 1604; Adams v. LeMaster, 223 F.3d 1177, 1179 (10th Cir. 2000). Specifically, we find at least one of Mr. Gibson's

-4-

claims—that a material breach of his plea agreement constitutes a violation of his constitutional right to due process—debatably states a valid constitutional claim. United States v. Martin, 25 F.3d 211, 217 (4th Cir. 1994) ("If the government breaches express or implied terms of a plea agreement, a violation of due process occurs."). Having established both prong's of Slack's threshold inquiry, we proceed to the merits of the appeal.

Because we must answer a question of law, our review of the district court's denial is de novo. Rowe v. LeMaster, 225 F.3d 1173, 1174 (10th Cir. 2000); Adams, 223 F.3d at 1179.

### III. Discussion

AEDPA establishes a one-year statute of limitations for federal habeas petitions. 28 U.S.C. § 2244(d)(1). Because Mr. Gibson's conviction was not final before AEDPA's enactment, the one-year statute of limitations does not begin to run until AEDPA's effective date, April 24, 1996. Hoggro v. Boone, 150 F.3d 1223, 1225-26 (10th Cir. 1998) (recognizing judicially created grace period); United States v. Simmonds, 111 F.3d 737, 746 (10th Cir. 1997) (creating grace period beginning on AEDPA's effective date). Hence, without tolling of the limitations period, Mr. Gibson brought his federal habeas petition, filed May 20, 1998, more than one year too late.

To determine whether the federal habeas petition was timely, we must construe the language of AEDPA's tolling provision, 28 U.S.C. § 2244(d)(2): "The time during which

a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Based on this provision, we recognize that the limitations period, which began running on April 24, 1996, was clearly tolled for one day until the state court denied the properly filed application for post-conviction relief on April 25, 1996. We then reach three conclusions: (1) the limitations period was tolled for the thirty days during which Mr. Gibson could have filed an appeal of the state court's denial of his application for post-conviction relief; (2) the state court's decision to grant an appeal out of time and decide the case on the merits does not transform all of Mr. Gibson's state filings into one "properly filed" application; and (3) the limitations period was tolled again on November 12, 1996, when Mr. Gibson filed his second motion for leave to appeal out of time in the state district court and did not resume running until June 25, 1997, when the state appellate court affirmed the state district court's April 1996 denial of Mr. Gibson's application for post-conviction relief. We also note that Mr. Gibson is not entitled to equitable tolling.

**A.     Tolling During the Thirty-Day Statutory Time Period**

In Rowe v. LeMaster, we tolled the one-year statute of limitations during the thirty-day statutory period in which a petitioner could have sought review of a state court

denial of a post-conviction application.[1]  225 F.3d at 1174.  Because we focused our inquiry on another tolling question, we did not specifically analyze this issue.  Thus, we hold today that, regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law.

This conclusion is consistent with our decision in Barnett v. LeMaster, interpreting when a post-conviction application is "pending" for tolling purposes.  167 F.3d 1321, 1323 (10th Cir. 1999).  Noting our interpretation followed the generally accepted definition of the term, we construed "pending" broadly "to encompass all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application."  Id.  Applying this definition, we tolled the limitations period from the time the petitioner filed a state post-conviction application until the state supreme court denied certiorari, including statutory grace periods for appeal.  Id.

Other circuits have also recognized that similar definitions of "pending" support

---

[1] Although we applied this thirty-day time period toward the one-year limitation period in Hoggro, we did not explicitly address the issue and the thirty days did not affect the outcome of the case.  150 F.3d at 1226-27.  In an unpublished opinion, we recognized the clock does not start running after a post-conviction denial until the petitioner appeals the denial within the time period allowed under state law.  Ellis v. Hargett, 182 F.3d 931, 1999 WL 27761, at *2 (Apr. 28, 1999) (unpublished opinion) (noting this approach is consistent with Barnett v. LeMaster, 167 F.3d 1321 (10th Cir. 1999)).  As discussed in the text, we now hold that the clock does not run during this period regardless of whether the petitioner appeals.

tolling the limitations period during a statutory grace period for appeal even when a petitioner fails to appeal during this period. Swartz v. Meyers, 204 F.3d 417, 424 (3d Cir. 2000) (concluding that, if "pending" includes statutory grace period when an appeal is timely filed, it should also include this period when an appeal is not ultimately filed); Mills v. Norris, 187 F.3d 881, 884 (8th Cir. 1999) (recognizing that "pending" should include time during which a petitioner *could have* perfected an appeal because the district court could dismiss a federal habeas petition filed before this time expires for failure to exhaust state remedies). The rationale of these cases is persuasive. At any time during a statutory grace period, a petitioner may file an appeal; we therefore presume he is "attempting, through proper use of state court procedures," to seek an appeal during this time. Moreover, AEDPA strongly encourages petitioners to exhaust state court remedies before seeking federal habeas review. 28 U.S.C. § 2254(b)(1)(A). A definition of "pending" that encompasses statutory grace periods for appeal furthers AEDPA's objective of state remedy exhaustion by tolling the limitations period for the entire period during which a petitioner could pursue a state appeal. Mr. Gibson's limitations period was therefore tolled during the thirty-day grace period for appeal; the clock began running again on May 25, 1996, when the thirty-day period expired.

**B.** **Consideration of State Decisions to Reach the Merits**

Mr. Gibson argues that, because the state appellate court allowed his appeal out of time, we should toll the statute of limitations during the entire period between his initial

filing for post-conviction relief and the state appellate court's final denial, including the period between the expiration of his time to appeal and his filing of a motion for leave to appeal out of time. We do not agree. The state court's grant of leave to appeal out of time cannot erase the time period during which nothing was pending before a state court. In addition, we have held that a state court's decision dismissing a prisoner's post-conviction application as procedurally barred does not determine whether an application is "properly filed" for tolling purposes under AEDPA. Habteselassie v. Novak, 209 F.3d 1208, 1212 (10th Cir.2000) ("We decline to follow the minority view that construes § 2244(d)(2) to mean that a state post-conviction petition is not properly filed if it is ultimately determined to be procedurally barred or otherwise is determined to be frivolous or without merit."). Following this logic, a state court's decision to reach the merits of a case does not transform all of a petitioner's post-conviction motions into one "properly filed" application.

Although the circuits agree that state procedural law should determine whether an application is "properly filed," see Adams, 223 F.3d at 1181, they are divided over whether to consider a state court's decision to dismiss a petition as procedurally barred or to proceed to the merits. Some courts have concluded that an application cannot be considered "properly filed" if a state court dismissed it on procedural grounds. See, e.g., Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000); Freeman v. Page, 208 F.3d 572, 576 (7th Cir. 2000), pet. for cert. filed, No. 00-5647 (June 23, 2000). We, however, have adopted the majority approach, looking only at state procedural filing requirements and not at whether

a state court ultimately determined the application to be procedurally barred. Habteselassie, 209 F.3d at 1211 (citing cases from the Second, Third, and Fifth Circuits). In Habteselassie, we noted that, if we were to follow a state court's decision regarding procedural matters, a state petitioner would be forced to file a federal habeas petition before the final resolution of his state petition; he would otherwise risk the dismissal of the federal application in the event the state application is dismissed as procedurally barred. Id. at 1212. We have recognized that the effects of this approach frustrate AEDPA's objective of furthering exhaustion of state court remedies. Id. (citing 28 U.S.C. § 2254(b)(1)).

The circuits' disagreement over whether to follow a state court's decision regarding procedural matters is the reason both the Seventh and the Ninth Circuits recently reached a different result regarding a similar tolling question than the one we reach today. Both circuits look to state court decisions in determining whether an application is "properly filed." Freeman, 208 F.3d at 576 ("Whether a collateral attack is 'properly filed' can be determined in a straightforward way by looking at how the state courts treated it."); Dictado v. Ducharme, 189 F.3d 889 (9th Cir. 1999) (interpreting "properly filed application" in light of state court's ultimate disposition of the application). Following this precedent, the Ninth Circuit decided the limitations period was tolled during the entire period between the petitioner's initial application for state post-conviction relief and the state supreme court denial of his second untimely petition on the merits. Saffold v. Newland, 224 F.3d 1087, 1089 (9th Cir. 2000) (concluding limitations period should toll in the interests of comity

-10-

when state court reaches the merits). The Seventh Circuit declined to follow Saffold's exact approach because the Ninth Circuit included the time prior to the second petition in which "nothing at all was 'pending.'" Fernandez v. Sternes, No. 99-2887, 2000 WL 1358730, at *2-3 (7th Cir. Sept. 21, 2000). Because of the state decision on the merits, the Seventh Circuit did exclude the time between the filing for leave to appeal and the final state disposition.[2] Id. at *4.

Despite the conclusions of the Seventh and Ninth circuits, we conclude that our more narrow approach, which confines our inquiry to state filing requirements, is more consistent with the plain language of the statute and with Congress's intent in enacting a one-year limitations period. Hartford Underwriters Ins. Co. v. Union Planters Bank, 120 S. Ct. 1942, 1947 (2000) (holding when statutory language is plain and unambiguous, a court need only enforce the statute "'according to its terms'" (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989))); Aramark Corp. v. NLRB, 179 F.3d 872, 878 (10th Cir. 1999). Having adopted an approach that does not consider state court decisions that petitions are procedurally barred, we will not adopt a contrary approach when state courts decide to reach the merits of petitions. A state court's decision to look beyond procedural deficiencies or to

_____

[2] The Seventh Circuit had previously decided that, when a state court does not allow a second collateral attack, the limitations period is not tolled during the time following a petitioner's filing of a motion for leave to file a post-conviction application. Tinker v. Hanks, 172 F.3d 990, 991 (7th Cir. 1999), pet. for cert. filed, No. 99-7682 (Dec. 27, 1999). In Fernandez, however, the court reached a different result because the state court had allowed the second collateral attack to proceed. 2000 WL 1358730, at *4.

-11-

grant an appeal out of time does not transform all of a petitioner's state filings into one "properly filed" application, which essentially "relates back" to a petitioner's original application for state post-conviction relief. Nor can a state decision on the merits transform a motion for permission to file an application into an actual application, as we discuss in the following section. Congress could not have intended such a result.

This result is also consistent with our recent decision in Rowe. In Rowe, we held that a second state habeas petition did not amend, and therefore "relate back" to, an original petition. 225 F.3d at 1175. In reaching this conclusion, we specifically noted that the petitioner could cite no authority "that time between successive state habeas petitions is somehow excluded from the AEDPA limitations period." Id. Although Mr. Gibson does not argue that his motion for leave to appeal "relates back" to his original post-conviction application, his request for tolling of the limitations period between the date the statutory period to appeal expired and the date the appellate court granted an appeal out of time would have the same effect; it would toll the limitations period for a period of time during which no actual "properly filed application" for post-conviction relief is pending in state court. 28 U.S.C. § 2244(d)(2).

## C. Determining Whether an Application is "Pending"

Because the state appellate court did not dismiss his appeal out of time until June 1997, Mr. Gibson contends that our definition of "pending" in Barnett, 167 F.3d at 1323, supports tolling the limitations period from his initial filing for post-conviction relief in 1995

-12-

to the state appellate court's denial of his appeal out of time in June 1997. This approach, however, ignores an important element of the definition: the state prisoner must be *attempting* to exhaust state court remedies. Id. In Barnett, we clearly held that a post-conviction application is "pending" under § 2244(d)(2) only when a prisoner is "attempting, through proper use of state court procedures, to exhaust state court remedies" Id. Although we look to state law to determine whether an application is "properly filed," we apply our own definition of "pending," which we interpreted in Barnett as a matter of federal law. Id.; see also Mills v. Norris, 187 F.3d 881, 883 (8th Cir. 1999) (holding the term "pending" is a matter of federal law).

Although the interpretation of the term "pending" is a matter of federal law, our definition does require some inquiry into relevant state procedural laws: under Barnett's definition of "pending," we must ask whether a petitioner was properly employing "state court procedures" in attempting to exhaust state court remedies. 167 F.3d at 1323. For example, consistent with the above discussion, state law periods for appeal are "state court procedures" relevant to our determination of whether and when an application is pending. Furthermore, in Mr. Gibson's case, Oklahoma law allows a prisoner to file applications for leave to appeal out of time, requiring that he seek permission of both the district and the appellate courts before filing an actual appeal out of time. Okla. Stat. tit. 22, § 18 app. rule 2.1(E)(1); Banks v. Oklahoma, 953 P.2d 344, 346-47 (Okla. Crim. App. 1998). Under Oklahoma's rule, a petitioner seeking permission to appeal out of time must file an

"application for Post-Conviction Relief," asking the state district court to grant leave to petition the appellate court. Okla. Stat. tit. 22, § 18 app. rule 2.1(E)(1). The petitioner may then appeal the district court's grant or denial to the Oklahoma Court of Criminal Appeals. Id. § 18 app. rule 2.1(E)(1). Permission of the state appellate court is required before a petitioner may file the actual appeal. Id.

Mr. Gibson allowed the statutory grace period for appeal to lapse on May 25, 1996, and did not begin the process that resulted in his actual appeal out of time until November 12, 1996, when he asked the state district court for leave to appeal out of time. Although Mr. Gibson properly filed a motion for leave to appeal in state district court on June 13, 1996, he did not file a subsequent motion in the Oklahoma Court of Criminal Appeals as required by statute, choosing instead to wait and begin the process again in the state district court in November 1996. Hence, although Mr. Gibson properly used state court procedures to file a post-conviction application for leave to appeal with the state district court on June 13, 1996, tolling the entire period between this first motion and his second motion on November 12, 1996, would be contrary to our definition of "pending": Mr. Gibson was not "attempting to exhaust state remedies" during this entire period. Barnett, 167 F.3d at 1323. We therefore hold that, after Mr. Gibson's thirty days to appeal expired, the limitations period was not tolled until he filed his *second* application for leave to appeal in the state district court on November 12, 1996.

We also conclude our definition of "pending" is most consistent with Congress's

intent to encourage exhaustion of state court remedies without allowing prisoners to toll the limitations period indefinitely. Reading the statute to include Mr. Gibson's June 1996 motion would certainly contravene Congress's intent in establishing a one-year limitations period. See Tinker v. Hanks, 172 F.3d 990, 991 (7th Cir. 1999) ("Congress could not have intended that the time for filing the federal action be tolled indefinitely by the simple expedient of filing repeated applications for leave to file state postconviction proceedings."); see also Adeline v. Stinson, 206 F.3d 249, 252-53 (2d Cir. 2000) (holding Congress could not have intended courts to construe a motion for leave to appeal, which is filed under general state motions laws, as an "application" under 28 U.S.C. § 2244(d)(2)). A broader interpretation would undermine the purposes of both federal law and state law, which seek to reduce "paper flow from prisoners" by requiring permission of the state *appellate* court before filing a subsequent post-conviction application. Tinker, 172 F.3d at 991. A prisoner should not be able to take advantage of state law procedures by repeatedly beginning a process and abandoning it.

The limitations period, therefore, resumed running on May 25, 1996, and continued to run until November 12, 1996, when Mr. Gibson filed his second application for leave to appeal out of time in the state district court. After the state appellate court gave Mr. Gibson permission to file an appeal of his application for post-conviction relief, Mr. Gibson had thirty days to file his appeal, Okla. Stat. tit. 22, § 18 app. rule 2.1(E)(2), which he did indeed timely file on May 15, 1997. Mr. Gibson's application was then "pending" through the state

statutory time to appeal. Once Mr. Gibson filed a timely appeal, the limitations period did not resume running until the state appellate court affirmed the denial of post-conviction relief on June 25, 1997, leaving Mr. Gibson 185 days to file his federal habeas petition. Mr. Gibson waited, however, for almost one year, filing his federal habeas petition on May 20, 1998. Hence, Mr. Gibson's federal habeas petition is clearly time barred under AEDPA's statute of limitations, 28 U.S.C. § 2244(d)(1).

**D. Equitable Tolling**

Mr. Gibson also argues that the limitations period should be equitably tolled because he was unable to secure a copy of AEDPA and because the state court concluded that his failure to appeal the denial of post-conviction relief within the statutory time limit was not his fault. We will address Mr. Gibson's first argument regarding his inability to obtain a copy of AEDPA but will not address his second argument regarding the state court's decision because he did not present it to the district court. Rhine v. Boone, 182 F.3d 1153, 1154 (10th Cir. 1999), cert. denied, 120 S. Ct. 808 (2000) (refusing to reach petitioner's equitable tolling argument because he did not raise it in the district court).

AEDPA's one-year statute of limitations is subject to equitable tolling but only "in rare and exceptional circumstances." Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling would be appropriate, for example, when a prisoner is actually innocent, Miller v. Marr, 141 F.3d 976, 978 (10th Cir.), cert. denied, 525 U.S. 891 (1998), when an adversary's conduct—or other uncontrollable

circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period, Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Simple excusable neglect is not sufficient. Id. at 96. Moreover, a petitioner must diligently pursue his federal habeas claims; a claim of insufficient access to relevant law, such as AEDPA, is not enough to support equitable tolling. Miller, 141 F.3d at 978.

We agree with the district court that Mr. Gibson did not exercise due diligence in pursuing his federal claims. He has not demonstrated why he did not pursue his appeal out of time after receiving the state district court's permission on June 13, 1996, or why he did not file his federal habeas petition within the 185 days after the state appellate court affirmed the denial of his post-conviction application. Mr. Gibson's evidence that he could not obtain a copy of AEDPA on June 17, and 18, 1998, and that another inmate could not obtain a copy on March 12, 1998, does not demonstrate that the state prevented him from learning about AEDPA during the thirteen months between its enactment and the day the limitations period expired for his federal habeas petition. In fact, the evidence shows that the library had the legislation until it was removed by another inmate. Mr. Gibson's alleged ignorance of AEDPA's one-year limitations period does not support the application of equitable tolling principles.

Because Mr. Gibson did not file his federal habeas petition within the one-year limitations period, his petition is barred by AEDPA's statute of limitations. 28 U.S.C.

§ 2244(d)(1). We therefore AFFIRM the district court's dismissal of the habeas petition as time barred.